UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 08-4518 ABC (JCx) | | Date | November 6, 2008 |
|---|---|---|---|---|
| Title | United States v. $17,700.00 in U.S. Currency | | | |

| Present: The Honorable | Audrey B. Collins | | |
|---|---|---|---|
| Daphne Alex | None Present | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: | |
| None Present | | None Present | |

**Proceedings:**   CLAIMANT'S MOTION FOR SUMMARY JUDGMENT  (In Chambers)

     Currently pending before the Court is Claimant Sharlene Gibbs's Motion for Summary Judgment, filed on October 20, 2008.  The Government filed an opposition to the motion on October 27, 2008, and Claimant filed a reply on November 3, 2008.  The Court finds the motion appropriate for resolution without oral argument, and VACATES the hearing on the motion set for November 10, 2008. See Fed. R. Civ. P. 78(b); Local Rule 7-15.  Having considered the materials submitted by the parties and the case file, the Court hereby GRANTS Claimant's Motion, for the reasons set forth below.

## BACKGROUND

     On February 5, 2008, during a routine inspection of packages at the Worldway Postal Center, Postal Inspector Loren Rofe examined the exterior of Express Mail parcel No. EH035168267 (the "Subject Parcel").[1]  (Compl. ¶ 10.)  The Subject Parcel consisted of an Express Mail cardboard box, with a handwritten Express Mail label that did not contain a business account number.  (Compl. ¶ 10.)  The Subject Parcel was addressed to Peter Moore ("Moore") in Gardena, California, from Sharlene Gibbs ("Claimant") in Lithonia, Georgia; it was postmarked February 4, 2008, from the 31145 zip code in Atlanta, Georgia.  (Compl. ¶ 10.)

     According to the Complaint, the United States Postal Service ("USPS") has "identified the Los Angeles and Long Beach areas as major source areas for controlled substances, meaning that controlled substances are frequently transported from the Los Angeles and Long Beach areas via the United States mail, and the proceeds from the sale of the controlled substances are frequently returned to the Los Angeles and Long Beach areas via the United States Mail."  (Compl. ¶ 8.)  Apparently, Postal Inspectors

---

[1]The facts here recited are taken from the Verified Complaint for Forfeiture filed by the Government on July 10, 2008.  Claimant admits these facts for the purpose of this motion only, arguing that even the facts as pled by the Government do not amount to the probable cause needed in order to file a forfeiture action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-4518 ABC (JCx) | | Date | November 6, 2008 |
|---|---|---|---|---|
| Title | United States v. $17,700.00 in U.S. Currency | | | |

feel that drug traffickers often use the Express Mail Service for these activities, and thus regularly "investigate" Express Mail packages "suspected of containing controlled substances and proceeds from the sale of controlled substances in Los Angeles." (Compl. ¶ 8.) Circumstances that may raise this suspicion in the minds of Postal Inspectors are alleged to include: (1) the type of packaging (drug dealers supposedly use Express Mail boxes, flat cardboard mailers, or tyvek envelopes); (2) handwritten labels; (3) lack of a business account number; and (4) origin or destination in "an area that is a known origination point for controlled substances, or . . . known destination point for mailings of controlled substances." (Compl. ¶ 9.) Gardena, California, is alleged to be a "known destination point for narcotics trafficking proceeds." (Compl. ¶ 10.)

As the Subject Parcel met these circumstances, Inspector Rofe telephoned the number listed for the sender of the package, and spoke with Claimant on the morning of February 5, 2008. (Compl. ¶¶ 11-12.) Claimant told Inspector Rofe that she had mailed the parcel the day before, that the parcel contained cash (but less than $10,000), and that the cash was for a BMW 745i that Moore was going to purchase for Claimant and her husband. (Compl. ¶ 11.) Claimant was apparently unable to provide Inspector Rofe with Moore's phone number. (Compl. ¶ 11.) However, at around 10:15 a.m. on February 5, 2008, Inspector Rofe received a phone call from Moore, who said that Claimant had told him the Inspector wanted to speak to him. (Compl. ¶ 12.) Moore then stated that he had "told Sharlene and Maurice Gibbs that his father bought cars at auctions and he could get them a good deal," although he had not yet found them a car. (Compl. ¶ 12.) Apparently, Inspector Rofe found that this statement contradicted Claimant's statement that she had sent Moore money for a particular type of car. (Compl. ¶ 12.) At some point (it is not clear from the Complaint whether it occurred on the same day, or later), Inspector Rofe learned that Moore had a 1998 federal conviction for cocaine sales and conspiracy to distribute cocaine and Phencyclidine, for which he was sentenced to 120 months in federal prison. (Compl. ¶ 13.) Moore admitted to Inspector Rofe that he had been convicted of cocaine trafficking charges. (Compl. ¶ 13.)

In a conversation alleged to have occurred on February 5, 2008, at approximately 3:00 p.m., Inspector Rofe asked Moore about an earlier Express Mail parcel he had received from Claimant in December 2007. (Compl. ¶ 14.) Moore "became flustered" and stated that the Gibbs had sent him car magazines to show him what car they wanted him to buy for them. (Compl. ¶ 14.) When Inspector Rofe questioned Sharlene about the contents of this prior package, she allegedly did not answer, but instead asked, "'What if I mailed his kids some gifts?'" (Compl. ¶ 15.) The Complaint characterizes this statement as inconsistent with the impression previously given by Claimant and Moore, who had "both acted as if they barely knew each other, had met through mutual acquaintances, and [whose] relationship was limited to Moore finding the Gibbs a vehicle." (Compl. ¶ 15.)

Also on February 5, 2008, although the time is not provided, Inspector Rofe observed "Arco," a trained narcotics detection dog, give a positive alert to the Subject Parcel, which suggested the presence within the Subject Parcel of either controlled substances or items that had recently been in contact with controlled substances. (Compl. ¶ 16.) The same day, although again the time is not given, a search

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 08-4518 ABC (JCx) | O | Date | November 6, 2008 |
|---|---|---|---|---|
| Title | United States v. $17,700.00 in U.S. Currency | | | |

warrant was obtained for the Subject Parcel, which was then opened and found to contain newspaper, as well as "a 'Walmart' plastic shopping bag containing a hanging file folder. Inside the folder was a hefty ziplock bag which contained three plastic bags and bundles of defendant currency." (Compl. ¶ 17.) On the basis of these facts, the Government brought this action for forfeiture of the $17,700.00 in United States Currency found in the Subject Parcel.

In her summary judgment motion, Claimant recited the above allegations. She also provided a declaration, in which she stated the following: "On May 6, 2008, four months before the plaintiff filed the complaint for forfeiture in this case, I sent a 'Petition for Remission Or Mitigation of Forfeitures' to the U.S. Postal Inspection Service in which I stated that the defendant currency was intended for the purchase of a BMW, I provided a W-2 showing that my annual salary was $85,000 and, to show the primary source of the seized $17,700, I produced a copy of an Allstate insurance proceeds check for $18,968.21 that I cashed on October 30, 2007. I also verbally told U.S. government officials about the insurance check." (Declaration of Sharlene Gibbs ("Gibbs Decl."), ¶2.) Claimant also provided interrogatory responses from the Government indicating that the only three types of Express Mail packaging provided by the USPS include boxes, flat cardboard mailers, and tyvek envelopes. (Declaration of Eric Honig ("Honig Decl."), ¶¶ 4-5.)

In opposition to the motion, the Government provided no evidence of any sort, and did not dispute the evidence offered by Claimant.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

If, as here, the non-moving party has the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party does not have the burden to produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, . . . the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id. Once the moving party satisfies this initial burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2) (emphasis added).

A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements of that party's case, and on which that party would bear the burden of proof at trial. Celotex, 477 U.S. at 322-23. An issue of fact is a genuine issue if it reasonably

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-4518 ABC (JCx) | O | Date | November 6, 2008 |
|---|---|---|---|---|
| Title | United States v. $17,700.00 in U.S. Currency | | | |

can be resolved in favor of either party.  Anderson, 477 U.S. at 250-51.  "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment.  Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  The "opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues."  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992).  The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant.  Anderson, 477 U.S. at 255.  "On the other hand, the movant's uncontradicted factual allegations ordinarily are accepted."  John v. City of El Monte, 515 F.3d 936, 941 (9th Cir. 2007).  Further, the court must view the evidence presented "through the prism of the substantive evidentiary burden."  Anderson, 477 U.S. at 254.

### ANALYSIS

In order to institute a forfeiture action, the Government must have sufficient evidence to constitute probable cause.  United States v. $493,850.00 in U.S. Currency, 518 F.3d 1159, 1169 (9th Cir. 2008).  Thus, the Government may not use evidence acquired after the filing of the complaint to show that probable cause existed at the time the complaint was filed.  Id. at 1168 (citing with approval United States v. $191,910 in U.S. Currency, 16 F.3d 1051, 1071 (9th Cir. 1994)).  "'Probable cause to believe that the property is involved in some illegal activity is not enough -- the government must have probable cause to believe that the property is involved in the activity subject to the specific forfeiture statute it invokes.'"  Id. at 1169 (quoting $191,910, 16 F.3d at 1071).  Here, the Government has invoked 21 U.S.C. § 881(a)(6), which provides that money shall be subject to forfeiture when it has been "furnished or intended to be furnished by any person in exchange for a controlled substance," can be traced to such an exchange, or was "used or intended to be used to facilitate any violation" of the federal drug laws.  21 U.S.C. § 881(a)(6); United States v. U.S. Currency, $30,060.00, 39 F.3d 1039, 1041 (9th Cir. 1994).  The Government asserts that the defendant currency here constitutes either the "proceeds of, was intended to be used in, or was used or intended to be used to facilitate one or more exchanges for a controlled substance in violation of 21 U.S.C. § 841(a)(1) . . . and 21 U.S.C. § 843(b) . . . ."  (Compl. ¶ 18.)

"The government has probable cause to institute a forfeiture action when it has reasonable grounds to believe that the property was related to an illegal drug transaction, supported by less than prima facie proof but more than mere suspicion."  $493,850.00, 518 F.3d at 1169 (internal quotations omitted).  "'To pass the point of mere suspicion and to reach probable cause, it is necessary to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-4518 ABC (JCx) | | Date | November 6, 2008 |
|---|---|---|---|---|
| Title | United States v. $17,700.00 in U.S. Currency | | | |

demonstrate by some credible evidence the probability that the money was in fact connected to drugs.'" U.S. Currency, $30,060.00, 39 F.3d at 1041 (quoting United States v. Dickerson, 873 F.2d 1181, 1184 (9th Cir. 1988)).  The existence of probable cause is determined based on all the facts, in the aggregate, and "'simply involves the question whether the information relied on by the government is adequate and sufficiently reliable to warrant the belief by a reasonable person that the [money] was' connected to drugs."  Id. (quoting United States v. One 56-Foot Yacht Named Tahuna, 702 F.2d 1276, 1282 (9th Cir.1983)).  Circumstantial evidence may be sufficient to establish probable cause for forfeiture.  Id.

   Here, Claimant argues that the Government cannot meet its burden of showing probable cause to believe that the defendant currency was connected to drugs.  In light of the Government's extremely short, and rather perfunctory, opposition, it should come as little surprise to the Government to learn that the Court agrees with Claimant.  None of the facts presented by the Government, either alone or in the aggregate, rise to the level of probable cause.  At most, they raise a suspicion that there might be a connection to drugs, but this is not sufficient.  The fact that a drug detection dog gave a positive alert to the outside of the package may have been sufficient probable cause to obtain a warrant to open the package, see United States v. Hoang, 486 F.3d 1156, 1160 n.1 (9th Cir. 2007) (noting that dog's "alert to the package created probable cause to believe that the package contained illicit drugs"), but no drugs were found here when the package was opened.  That either the package itself or the money therein may have been contaminated with sufficient drug residue to trigger the alert is not convincing evidence, especially in light of the Government's apparent assertion that virtually every personal Express Mail package sent in this country is somehow connected to the drug trade.  (See Opp. to Mot. for Summ. J., at 4; Compl. ¶¶ 8-9.)  Certain controlled substances have been found to be rather "adhesive," and easily transferred from one contaminated surface to another.  U.S. Currency, $30,060.00, 39 F.3d at 1042.  Further, the Ninth Circuit has long recognized that this nation's currency supply is not particularly pristine.  Id. (questioning "the probative value of positive dog alerts due to the contamination of America's paper money supply with narcotics residue").  Thus, while "a positive dog alert is probative in showing that the currency has been in contact with a narcotics substance or contaminated currency at some 'prior' point in time," this "does not establish . . . that the currency was actually exchanged for or intended to be exchanged for drugs by the person currently in possession of the currency . . . ."  Id. at 1043.

   Therefore, a positive dog alert must be combined with "other credible evidence clearly connecting the money to drugs."  Id.  Here, however, such other evidence as the Government provides is not convincing.  Much of the Government's case appears to rest on the packaging -- that is, the fact that the Subject Parcel was an Express Mail cardboard box, of the kind sold by the USPS specifically for use in sending packages through the Express Mail service, with a handwritten label, and not charged to a business account.  However, the Government has presented no evidence that this type of packaging is preferred by drug dealers, other than the subjective opinion of one Postal Inspector, whose background, qualifications, length of service, and basis for forming this opinion, while they may be unimpeachable, have not been provided to the Court.  Without any evidence, this Court is certainly not prepared to find that every personal package sent through Express Mail, in packaging sold by the USPS for that purpose,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-4518 ABC (JCx) | | Date | November 6, 2008 |
|---|---|---|---|---|
| Title | United States v. $17,700.00 in U.S. Currency | | | |

should be assumed to be from, or sent to, a drug dealer. The fact that this particular package was sent to the allegedly "known destination point for narcotics trafficking proceeds" of Gardena, California (another unsupported "fact" put forward by the Government) does not help.

      The Government also points to the alleged "inconsistency" of the statements made by Claimant and Moore. However, the statements identified by the Government do not appear to be particularly inconsistent. This is especially true in light of the other facts known to the Government before it filed the Complaint: that the sender and addressee of the Subject Parcel appeared to be using real names and correct addresses, and that Claimant had provided evidence of a significant salary and a legitimate source for the seized money. (Gibbs Decl., ¶ 2.) Of course, it may seem somewhat odd to send $17,000 through the mail, rather than using a more secure source of payment, and it may even raise a suspicion that Claimant could have been involved in some illegal activity. But even if this suspicion is indulged, "a mere suspicion of illegal activity is not enough to establish probable cause that the money was connected to drugs." Id. at 1044. Here, the only potential connection to drugs other than the dog alert was Moore's admission that he had been convicted of a drug offense ten years before. Neither in itself, nor combined with the other evidence available to the Government at the time the Complaint was filed, was this sufficient to give rise to probable cause.

### CONCLUSION

      As the only conclusion that can be drawn from the undisputed material facts presented here is that the Government did not have probable cause to institute this forfeiture action, Claimant's motion for summary judgment must be GRANTED.

**IT IS SO ORDERED.**

                                      Initials of Preparer    DA